Barney, Judge,
delivered the opinion of the court:
This is the second time this case is before this court. It was first decided here April 7, 1913, and will be found reported in volume 48 of our Reports, at page 293. A full statement of the case will be found in the report, and will not be repeated here, except in so far as is necessary to understand the foregoing additional finding of fact.
In the original trial of this case the court found, in substance, among other things, that before letting the contract in question (which was for the construction of locks and dams on the Warrior River in Alabama) the Government’s engineers had made borings upon the site where these works *20 were to be constructed, primarily for the purpose of determining what kind of a foundation would be necessary. Afterwards the record of the result of these borings as to soil, obstructions, etc., encountered were by the terms of the contract submitted to the contractors before they made their bid, as showing “the material to be excavated as far as known” (italics ours), but bidders were warned to inform and satisfy themselves upon this subject. The court further found that the record of borings so submitted to the plaintiffs did not show, as far as known to the Government, the material to be excavated, in that none of them showed the encountering of any obstructions, whereas in at least 16 instances sunken logs and cemented sand and gravel were encountered.
The court in its findings stated that:
“ The additional expense and value of said excavation over and above what it would have been if the boring sheets had represented the character of the ground with respect to logs was $6,150.”
“ How much of the cost was due to the presence of buried logs encountered in making the original borings but not shown on the permanent records is not definitely shown by the evidence.”
No allowance was made by this court in its judgment for either of the above items, and upon appeal to the Supreme Court from such judgment this court in that regard was reversed and the case remanded here with the mandate that we allow—
“The demand of the greater expense of excavation and pile driving due to misrepresentations of material in the specification and drawings.”
We have made no change in the finding heretofore made by this court as to the additional expense of the excavation by reason of such misrepresentation, but that finding is reaffirmed. We have added to that the additional expense of the pile driving caused by the same misrepresentation, and the sum of these two items is what we understand the Supreme Court has said we should allow to the plaintiffs for their damage arising from such misrepresentation.
*21 The defendants have insisted upon this rehearing:
(1) That the evidence in this case does not furnish any basis upon which the court can estimate or find the increased cost of driving either foundation or sheet piles due to the presence of cement and gravel, and that as this court has already found upon the subject of the expense of pile driving, as above stated, no further finding upon that subject should now be made.
(2) That under the decision of the Supreme Court the plaintiffs are only entitled to recover the increased cost of labor due to the presence of the identical logs which were encountered in the drilling process but which were not shown on the sheets exhibited to the plaintiffs.
We can not agree with either of these contentions. As to the first contention, the finding noted only goes to the additional expense arising from encountering the identical logs encountered in the Government borings but not shown on the sheets exhibited to the plaintiffs. That is not the measure of damages due the plaintiffs for such misrepresentation as we understand the law or as we understand the opinion of the Supreme Court, which is now certainly the law of this case. The fallacy of the Government’s contention is easily illustrated. Possibly, and quite likely, not a single pile, either sheet or foundation, was driven by the plaintiffs at any one of these 16 places where the exhibited sheets were a misrepresentation, and hence it would follow, according to the contention of the defendants, that the plaintiffs suffered no damage by such false exhibits. The result of these borings was shown to the plaintiffs to inform them that there were no sunken logs and other impenetrable material at the particular places where the borings were made as an indication to them of the material generally to be encountered in the construction of the whole work.
Of course, the damage arising to the plaintiffs from the deception complained of and found from its very nature is not susceptible of definite proof, i. e., absolute precision. But the record is replete with competent evidence entirely satisfactory to the court in making its findings upon that question.
*22 It is also insisted by tbe defendants that a large part of the increased expense to the plaintiffs in driving the piles is claimed by them to have been caused by unreasonable inspection by the Government officers in charge of the work in compelling them to hammer their foundation piles into splinters and by ruining much of their sheet piling in the same way when these sunken logs and other impenetrable material were encountered. Hence it is argued that the damage to plaintiffs arising from such unreasonable inspection is remote and not proximate to the deception complained of. It is perhaps a sufficient answer to this contention to say that the defendants have always contended that such inspection was “ fair and in accordance with the specifications,” and this court has so found. Hence it appears from the findings that all of this extraordinary pounding of the piles was reasonable and made necessary by the unexpected conditions encountered. We might also add that we can not see any force in the contention that a party can claim exemption from liability for damages in the performance of a contract arising from his deception on the ground that such damages were aggravated by his own unreasonable conduct in the performance of his part of the same contract.
Judgment is ordered for the plaintiffs in the sum of $37,931.57.
All concur.